Mr. Perkins, the next case, please. Sierra X versus Noah X. The apple on it. Let's go.  May it please the Court. My name is Eric Dworkin. I'm here with Timothy Herman. We represent Lincoln Schatz, who was formerly the trustee of certain Schatz family trusts, four of them, of which he was removed by the trial court's order June 28, 2019, which was subsequently affirmed, if you will, by the trial court's denial of Lincoln's motion for reconsideration. The principal issue up on appeal is whether the order entered by the trial court on August 5, 2019, was injunctive in nature or whether it was, as my opponents insist, an interlocutory judgment. If it is an injunction, the remedy is simple. From this court, there was no finding by the trial court of the requisite elements for injunctive relief, and there was no evidentiary hearing held, given that the material facts were in dispute at the time of... What difference would an evidentiary hearing have made? Lincoln, your client doesn't deny that while he was trustee, somebody falsified, you know, these records. So... Isn't that enough to justify his, at least a temporary removal... Yes. ...and assure against further problems while the court entertains a plenary consideration of all the claims? So let me look, then, at the factual record as it existed as the trial court ruled. The petitioners, Sarah and Rachel Schatz, sought removal. And in the removal petition, and they're crystal clear on this, that the conduct that served the basis for removal was the intentional, sophisticated falsification of documents. He signed an affidavit that said, number one, he didn't do it. Number two, he didn't even know about it. That's correct. And so from the pleadings on file, we certainly have an issue of fact on the question... That is correct. ...of whether this man participated in, or whether he knew about it and said, I didn't buy it, and did nothing. Well, in fact, as the record stands, he says, I did not buy it. Well, we understand he says that. But in an evidentiary hearing... In an evidentiary hearing, yes. ...the affidavit would be meaningless. It would be absurd. Yes, Your Honor. Yes. So the real question in this case is, I think, is whether this was or was not an adjunct. Correct. And so jumping straight to that, the plaintiff filed a motion for removal, plaintiff filed a reply in support of the motion for removal. At no point in those pleadings, and I'll get to what the trial court said in a moment, but at no point in the plaintiff's, or the petitioner's, plaintiff's pleadings did they say, we want a judgment. The prayer for relief did not say, enter judgment. They did not cite the summary judgment statute. Okay. Your point is that this is a preliminary injunction, is that right? That's correct. Okay. So the motion for removal did not ask for a certain period of time that they be removed, right? That's correct. It was for a complete removal, which was what was requested in the complaint. Is that correct? Yes. And so there was an order of removal, and there was no time constraint when it was removed. That's correct. So does that enjoin your client from doing, enjoin him from doing anything or telling him to do something? It tells him that he can no longer act as trustee. He can no longer manage the distributions of the trust. He can no longer oversee the assets of the trust. But I can agree or disagree with you with that, but here's my other question. Assuming that it was a preliminary injunction under 307A, you had 30 days to appeal from that. Yes. Did you do that? Actually, this is, you raised an excellent point, Your Honor. The preliminary injunction was not the June order. The preliminary injunction, so what happens procedurally is the trial court enters an order on June with no qualifications. And then we filed a motion to reconsider because the basis in the motion, so we did not file a motion to reconsider, said, hey, that's an injunction, that's a preliminary injunction. The trial court entered unqualified relief. We filed a motion to reconsider and said, Your Honor, the basis for the relief you granted was not articulated in any pleading and was not raised such that we couldn't raise this defense. The trial court said, and then, well, it doesn't matter, I'm still going to sustain my order, and I specifically asked the trial court, is it a sanction or is it a judgment? And the trial court at that point says it's an interim measure. It's at that point that the trial court transformed it into a preliminary injunction. What does that mean? Transformed it into a preliminary injunction? To the extent that the court wanted to view and it wasn't articulated by anyone in the motion for renewal, the court modified whatever injunctive relief. Do I have language of that in the order regarding this motion for reconsideration? No. The trial court's order is I'm using my interim authority to enter, I'm using my inherent authority to enter interim relief. No, she didn't say interim. No, she said interim. It's an interim measure. I think it's more vague than that. I think it's more vague than that. I have a quote here. It's part of my inherent authority as a chancellor to remove the trustee as an interim measure, all right? So moving on to where we are with the vote. And then Mr. Dorton interrupted me. And the court was in response to my question because I asked the question, was the basis for your removal, is that a discovery sanction? The removal that was done before. Yes. She's saying I removed him. Is it a discovery sanction or is it the entry of a judgment? Two very different bases for relief and the trial court doesn't say, oh, it's a judgment. So we make it a preliminary injunction from all that language. I don't believe it can be anything else. The second order is a preliminary injunction. That's correct. The second order is a preliminary injunction. I don't think it can be anything else. You have three choices. It satisfies what an injunction does. If you look at the language from Zatella of the United States. Is it keeping the status quo pending resolution of the case? It affects the relationship of the parties and their everyday activities outside litigation. And it says that Lincoln Schatz shall no longer serve as trust's day-to-day trustee over the affairs of the trust and the beneficiaries. The problem that I have is you evidently viewed it as a permanent injunction because you asked for 304A findings as soon as she wrote. The 304A findings are only applicable to final judgments. It was after the hearing that I reconsidered that it was appropriately a 307A1. Dan, there's no question. The trial judge views it as interim relief, I guess. Here's the issue. We believe interim means preliminary. The other side of interim means interlocutory. There's no other meaning for interim. I don't know how else we have to give the trial judge. I'm giving you this relief while I go on to the rest of the case. That's interlocutory. And that's what I asked. Is it a judgment? And the court didn't say yes to that. It would be fundamentally unfair because if it's a judgment, the rules for appeal and the rules for the rest of the case are different. And that's why I asked that question. What is the basis for your relief? So what is the basis for our recourse? We had demonstrated that the basis for relief that the trial court used on the motion for removal was that the verification was sound. It was not the basis articulated by the plaintiffs. So that was the reason we filed the motion to reconsider. We said we didn't have a chance to raise a defense to that. And that's when the trial court said, no, I'm going to affirm myself, and that's when I asked the question, well, what is it? And the trial court said it's an interim measure. It did not say it was. If the trial court says it's a judgment, I think potentially I'm arguing that, no, it's in effect an injunction, which I still am, but I think we have the added basis that the trial court didn't call it a judgment. Not in the motion for removal, not in the order on the motion for removal, not on the hearing on the motion. There was a hearing on the motion for removal. There was a ruling on the motion for removal. There was a hearing on the motion for reconsideration. And there were two orders. And not one of those five times did the trial court say, I'm entering judgment. And just to be clear, the plaintiffs never said we're asking for a judgment. Well, let me ask you a question. The June 28th order was the first order. That's correct. As to the second order, did it in any way modify the June 28th order? As I understand the term interim, yes. Because what did it change? What did the court change from the June 28th order? As I read interim, I think that the court was correct earlier when it mentioned that the June order was unqualified, that there was no duration, there was no limitation. It was absolute in its nature. I believe when the court said I'm doing this as an interim. Well, if it was absolute with no duration, it would be a final order. It would. Well, it would be susceptible to a 304A. It wouldn't. It would need to be. It would have to be a final order to get 304A. That's correct. Well. 304A is only applicable to final orders. A final order. It doesn't dispose of all the parties or all the functions of action. But it must be a final order. But then on the motion for consideration, the court didn't simply reaffirm itself. It added one. Again, I asked that question, is this a judgment, which would be the 304A issue. Because 304A applies to judgments. And the trial court, for the trial court's reasons, didn't say it was a judgment. In some sense, it is fundamentally unfair if I ask the trial court the question to protect my client's rights. I'm going back to Judge Rash's question. If the June 28, 2019 order was in fact an injunction, you had 30 days to file a notice of appeal, didn't you? That's right. You could, however, file a notice of appeal within 30 days of any order denying a motion to modify or modifying. In which case, that would be the second order. That's correct. So we're back to the same question. Did the second order modify the first order? And if it did modify the first order, then your notice of appeal is timely. And if it did modify the first order, then I think I'm also correct that it's injunctive relief and the requisite resolution occurs. So if I'm right that it modified and went from absolute to preliminary or permanent to preliminary, such that the appeal is right, which I believe it is, it's also true that as an injunction, the trial court didn't look at the elements, didn't assess the question in front of the trial court, and didn't hold the required evidentiary hearing. But the first order was an injunction, whether you call it a permanent injunction or a preliminary injunction. If it was a permanent injunction, it merely wasn't appealable because of the absence of the 304A language. The second order is interim, which is clearly not permanent relief. So in that particular case, it becomes subject to appeal under 307. But in both cases, it's injunctive relief. They're telling the man, you cannot act as trustee. You cannot do this. You cannot do that. So it's injunctive relief any way you look at it. The question is, what type is it? In either case, by the way, the elements would have to be proved. I believe that the trial court changed the character in the second to preliminary such that, I mean, or if the court wants to say it didn't change the character, then it denied our motion to dissolve it. However, Rome looks at the motion to reconsider, the effect of the motion was to set aside, i.e., dissolve the injunction that had been entered previously. Well, there's also case law that says, though, a motion to reconsider does not toll the time for filing. I notice of appeal under 307A. The court is correct. I have not researched, and it's a bit confusing to me, given that the motion to the denial of the motion of reconsideration, which is effectively a motion to dissolve, isn't, in fact, separately appealable. I understand the court is correct that you can't, technically can't do a motion for reconsideration. But more often than not, the motion for, the relief in the motion for reconsideration, which is what you look at, is to modify or dissolve, which is itself appealable. So I understand that that is the law. But in this case, because the relief was changed, it doesn't, the issue no longer is, was the appeal timely on the first order? The appeal is timely on the second order, which is the qualified order. Mr. Dworkin, since the orders have been entered, or were entered, and this appeal was being briefed, have there been any developments in the circuit court that would touch upon our resolution of this particular case? I will answer the question this way, Your Honor. To the extent that I answer yes or no, I'd be going outside the record. Understood. There is a trustee that has been put in place by court order that the parties agreed to. Were the court to reverse and Lincoln be reinstated until such time as there's an evidentiary hearing, I don't know what happens at the trial court level there. I think the trial court would have some say in that. But other than that, nothing else has happened in front of the trial court. I apologize. The forensic accounting that had been discussed is ongoing with an independent account. Well, discovery is ongoing with respect to the other claims. Well, actually, the discovery, what the parties have done is the trial court, and by agreement of the parties through the named trustee, has retained a separate forensic accountant who doesn't work for the parties to look at the books to see the scope of whatever damage was caused by the intentional conduct. So if no other discovery is going on at the time, I believe the parties, I can't speak for the other side, but my sense is the parties in the court are waiting for the result of that forensic accounting. If sent a summary judgment, can an injunction ever be entered without an evidentiary hearing? I do not believe so, Your Honor, and I believe the Patson case, P-A-S-O-N, states that when you're removing a fiduciary, it's absolutely necessary. Well, unless, of course, summary judgment is appropriate. But in this particular case, you've got an affidavit that creates an issue of fact. I have at least two. I have two affidavits. I have an affidavit at the motion for removal stage that says it wasn't intentional, and then I have an affidavit at the second stage that says Lincoln relied on counsel for the production and the review of documents that were provided by his brother Noah for discovery. If there's no further questions, I reserve any time for rebuttal. Thank you. You'll have five minutes. Thank you. Counsel. Good morning, Your Honor. Mitch Bryan on behalf of Plaintiff Sarah Schatz. Good morning, Your Honor. Daniel Maron on behalf of Rachel Schatz, who's here in the courtroom. Are you going to divide your time? Yes. We are, Judge. You've already agreed on? We have, Your Honor. I'll take ten minutes, and Mr. Maron will take five. Okay. May it please the Court, Counsel, with all due respect to Mr. Dworkin, I see this appeal as built on multiple either misstatements of the record or disregard of critical parts of the record that were the basis for the removal order. They fall into four categories, and I'll just summarize them. For one thing, Judge Meyerson never stated that the removal order was not a judgment, never stated, as it was stated in the issue on appeal, that this removal was on an interim basis. Well, I disagree with you, Counsel. I've got the transcript here. She said it was an interim order. She said, It is part of my inherent authority as a chancellor to remove the trustee as an interim measure. How could she be more specific than that? Interim in the sense that an interlocutory judgment where a court of equity is removing a trustee preliminary to a trial on the merits of the rest of the case for surcharge, for ultimate accounting. There is much more, and there is much more in this case than removal. Your Honors, but under your position, under your world view of this case, those other claims that were forthcoming, they wouldn't result in the undoing of what the order Justice Hoffman just said? No, sir. He would still be out as trustee. Yes, based on this removal order, and as the court stated in her ruling, this was based on, she focused on specific, uncontested, uncontroverted facts. So she was very careful not to go into contested facts. She, and we quote at length in our brief, she based it on uncontested, uncontroverted facts. And the fact of the matter is that the removal motion against Noah Schatz became moot because he resigned knowing what was coming. And secondly, Judge Meyerson recognized that even the appearance of impropriety in verifying interrogatory answers, and I'm sort of jumping around a little bit because the motion for partial summary judgment prior is extremely relevant. It wasn't specifically what Judge Meyerson based the ruling on, but it's relevant because the discovery that led to the exposure of a fraudulent alteration and misappropriation of trust assets stemmed from Judge Meyerson's provisional denial of the motion for partial summary judgment, where she said, you know, you've almost got me there, but I want to see a clear breach. And this was just a little bit. In that particular case, did you file another motion for summary judgment? On the request for a forensic accounting, yes. That was a motion for partial summary judgment. But the motion for removal renewed the request for effectively partial summary judgment on the CPA engagement, but also point blank requested removal based on what we knew and then established. Well, you're asking for removal. You're asking for injunctive relief. So now the question is, I'll ask you the same question as your opponent. Absent a summary judgment, can you ever enter an injunction permanent or preliminary without an evidentiary hearing? Your Honor, I believe so in these circumstances for two reasons. One is that a request to an equity court to remove a trustee where the equity court has a supervisory jurisdiction over the trust, the equity court has the inherent authority that's not subject to a strict summary judgment rules. I believe, Your Honor, to conduct the types of proceedings that are. You're suggesting that the chancery court, the circuit court of Montgomery County doesn't operate under the Code of Civil Procedure? No. I'm saying that. Summary judgment is part of the Code of Civil Procedure. Your Honor, that is true. And what I'm saying that this type of ruling is not strictly speaking a summary judgment within the meaning of the rules. What is it then? It's a remedial measure that an equity court has in supervising and protecting trust assets. This is something that goes, you know, back into. There has to be some findings. There were. Based on evidence that's not disputed. There seems to be a dispute, right? There were findings on evidence that was not disputed. And I think I won't read from the record, but I quote this in our brief, that the court found that the fact that there were misappropriations, the fact that there were falsifications of trust records that ultimately not only were sworn answers to interrogatories, but also flowed through to verified accountings that the defendants filed with the court under oath. Those facts were uncontested. There was a question about whether Lincoln Schatz specifically knew. He said he didn't. He says he didn't. No, but he also he also said that he he verified knowledge that he verified the interrogatory answers. He doesn't acknowledge, but he swore to the accountings. And this information, these are falsification. Well, he said he didn't know. We said I didn't know. I didn't do it. And I didn't know. So now the question becomes, can you determine that he did or didn't know in anything other than an evidentiary hearing? Yes. What Judge Meyerson did determine as a matter of uncontested fact is that this occurred on his watch as a fiduciary and as a party in the case, but primarily as a fiduciary. So the fiduciary responsibilities didn't begin and end when the case started. The case continued. And the falsifications and Lincoln Schatz's responsibility not only occurred before, this is 2014 through 2016. The lawsuit was filed in 2016. The discovery was ongoing in 2016 and 2017. And so he just sort of abdicated his responsibilities and said, well, you know, I just don't know. I didn't do what I needed to do as a trustee. But since I didn't, I didn't know. Well, Judge Meyerson, what he doesn't know is that the co-trustee who resigned voluntarily, there were some strange charge cards, et cetera, and so on going on. And he says, I didn't know about this. I didn't know this. So if you have a trustee who has a co-trustee that's doing something he shouldn't be doing, but the man doesn't know about it and doesn't participate in it, is that necessarily just because he was a trustee at the same time grounds to remove him? In this instance, yes. Why in this instance? For a couple of reasons. One is, Your Honor, Lincoln Schatz, as a co-trustee, has the same responsibility as Noah Schatz, the other co-trustee. The law is clear that one co-trustee cannot just ignore. Secondly, Your Honor. Well, the question is, did he ignore? Where's the evidence he just ignored? We understand that. If he didn't, if he knew about it, or if he sat idly by and let it happen. That's what the cases say. Any one of those three and he's gone. But the question becomes, where's the evidence that he just sat idly by as opposed to that he was duped like everyone else? Your Honor, here's the tell. It would have been very simple for Lincoln Schatz to have qualified his interrogatory answers. These are sworn interrogatory answers. He could have said, I swear, you know, I verify up to this point and no further. But this is not just the responsibility of a trustee during the administration of a trust. This is administration of a trust and showing the court that the discovery that ultimately was a substitute, not a good one, for a full accounting of details that became very relevant. He says, these are our answers. After dodging for, you know, months and months and rounds of discovery conferences and so forth, where the defendants are saying, look, you want those details? Look at our 90,000 pages of documents. You're going to find it in there someplace because it's all right and it's all correct. And if you just open your eyes, you'll figure it out. Well, this was a convenient sort of complicity. And it would have been, Your Honor, I'll explain. Please do. This was Lincoln Schatz saying, all this information, it's all there, it's all accurate, it's all complete, and it all exonerates us. And I'm going to sign off on it because I know it's all right and it does all that. But if it doesn't, then I didn't know about it. So he's saying that, well, if my brother did something wrong and I didn't know about it and I didn't do what I needed to to substantiate what we're answering in these interrogatories, then it's okay. That's really his problem. That's what I mean by, you know, I mean literally conspiracy. So what you're arguing is that a fiduciary has to know whether he knows or not is what your argument is. He has to know because he was a fiduciary. He certified that this was correct. Even if he didn't know that there were some strange things going on, even if he didn't know that there was some wrongdoing, he had no knowledge of it at all, because he was a fiduciary and he said, these are our books, et cetera and so on, he had to know. That's your argument. Your Honor, not that he had to know, but he did not, there's no indication. In fact, there are admissions that he did not use even due care to know. He acknowledges in his affidavits that I just left that to my brother. And in fact, he says, not only that, he says I left it to an accountant. I didn't have to know. But he still verified interrogatory answers. And, Your Honor, I know I'm running out of time. But in terms of your position, I take it in the sort of see no evil, hear no evil position was sufficient. Yes. To justify the judge removing his trustee. Especially in light of a case, I believe it's the Hawley case, that says that even the appearance of, you know, of conflict or impropriety, that a fiduciary is held to that high standard, that even the appearance of an impropriety is a breach of duty. And, Your Honors, I also will, you know, invoke the, I think the equitable principles of a court of equity having broad discretion in a matter like this, in removing a trustee, to consider it. It's not a question of whether she has the authority or the equitable authority to remove a trustee. The question here is, did she follow the proper procedural means to do it? In other words, should she have given, number one, is it an injunction? Number two, should she have given an evidentiary hearing in order to grant this relief? And if the answer is she should have but didn't, it's got to go back. If, on the other hand, she didn't have to, she has some authority to do this without evidentiary hearings, then in that particular case, maybe you're right. Your Honor, if I may, I believe she had the authority and that there were, there were uncontroverted facts on which findings were made. And I'll also point out that in the motion for reconsideration, there was no assertion or no challenge to the failure to hold an evidentiary hearing, nor was there any request for clarification. And I know Your Honors know the record. The question is, should she have given an evidentiary hearing in order to grant this relief?     In this case, the plaintiffs brought it, et cetera, et cetera. And she says, I'm holding that I do not need to take evidence to decide this question. That's what she held on June the 28th. Yes. It was an issue. It was there. This is in a situation where they came up with this on appeal. I understand that, Judge. And I think you asked me, not answered, why an evidentiary hearing would not have changed. Ah. It would have changed. Well, uncontroverted facts. In other words, there were uncontroverted facts on which specifically she based her removal decision. So I go back to another question. Can a court ever enter a summary judgment that's not been requested? I think you'll find the answer there is no. It must be requested. And, Your Honor, I maintain that this is not a summary judgment in the conventional sense, where a court of equity has the inherent authority to remove a trustee. Your Honor, I know I've taken way too much time. I want to give Mr. Merritt a chance. Thank you, Your Honor. Thank you, Your Honor. Very briefly, given the amount of time here, I want to say. We'll give you a little time. Go ahead. Oh, well, thank you. It was our time we were burning up. Well, no, but anyway. So I will say that the Court did proceed on a set of undisputed facts, just as in the summary judgment motion. I'm not afraid to say this was a – this was – it was an extension of the motion for personal summary judgment that we filed in 2017 that was denied without prejudice. We re-brought it in this – in page 2 of our – they denied in their Eppley's brief – sorry, their reply brief before this Court that the motion for personal summary judgment was even referenced. It was referenced on page 2 of our motion. And the bottom line is the undisputed facts that were before the Court were the defendants were trustees, the plaintiffs were beneficiaries. The defendants were also beneficiaries. Both the plaintiffs were beneficiaries. Defendants tendered records in discovery as purportedly authentic trust records. The defendants signed verifications twice, averring to the truth and accuracy of their answers to the interrogatories. Upon inspection, the records that were tendered included false information in at least 14 to 16 instances. 16 instances, actually. But there were 16 instances that all dealt with Noah. I'm sorry? There were 16 instances that dealt with Noah, not with Lincoln. You know what, Your Honor? What I was leading up to – okay, let me just finish the last thing that I would say about the undisputed facts. Defendants do not deny that this occurred, including Lincoln, who's the appellant here. He does not state any explanation for what occurred. These are two trustees, and I think the law has to look at this from the point of view, not so much of the trustees, but of the beneficiaries. Hold on. But Lincoln did sign an affidavit saying, I didn't do it and I didn't know about it. He also signed a verification. That said this is it. That said that these are accurate records. And then at a later time, it turns out that these are inaccurate because of 15 or so – They were inaccurate at the time. Irregular. Well, there's no question. Yes. But the question is, did he know they were inaccurate at the time? I don't think we can parse that out. These were trustees acting together, had the same counsel, accounting together, signing all the same documents, signing all the same verifications, no distinction whatsoever. And as counsel, my co-counsel indicated, he didn't qualify his verification whatsoever. Under the provisions of the trust, was one trustee able to transact business without the consent of the other trustee? You know what, Your Honor? I think it doesn't specifically say in the trust. Like, for example, the checking account required dual signatures on checks. But there was debit ability as well on these accounts. And the trustees, in fact, engaged in debits separate from each other. So at least Noah didn't, as far as we can tell. But my point is, upon this record, the trial court is faced with a situation where she needs to restore integrity to the proceedings. Counsel, there's no question that she has an obligation in dealing with a trustee. The only question we have here is, should there have been an evidentiary hearing? Not when you have undisputed facts up to this point. These undisputed facts that I just recited are enough to remove both trustees. Because this is an undisputed record. Upon his, as counsel said, on his watch, this occurred. He signed off on it. Part of the reason we divided our time is I was going to address this waiver issue. One of the things that is similar to what we're talking about here, the Lickin asserts that he could have brought up this Trust in Trustees Act insulation, essentially. He could have asserted this Trust in Trustees Act at the point of the motion to reconsider and not prior to that. But he could have brought it up at any time. And in his sole reply filed two months before the June 28th ruling, Lickin stated as a defense to the motion to remove that he properly relied upon an independent third-party accountant, Andrew Meharis, to review and keep the company books. And he indicates also there's no law in Illinois that would require a corporate officer or director to perform a line-by-line review of the company's books. So he's basically saying I had people. Just to briefly address the waiver issue, he could have said at that point in time, the Trust in Trustees Act has this provision that says the same thing. And if I hire counsel and it was done properly, I can't be blamed for what they tell me. Could he rely on that principle absent the Trustees Act? I'm sorry? Could he rely on that principle absent the terms of the Trustees Act? The principle being I justifiably, I am a trustee. Forget about the Trustees Act. I'm a trustee. I justifiably relied upon what my accountants told me. And he's basically saying his brother, too. He's saying I relied upon my brother, too. These are all ways of just squirming out from having responsibility. And trustees are held to the highest recognized standards. What they're saying is trustees can't trust each other, and they can't trust their accountants, and they can't trust their lawyers. No, it's essentially strict liability. Strict liability. Strictly liable. Right. Right. Trustees are held to the highest standard of anybody in civil law. And if on their watch $120,000 is falsified and you sign off on it and you tender your accounting and you tender your signature, saying that this is all on the up and up and I reviewed it, now they're, you know, in the waiver issue they're trying to say the Trust and Trustees Act, you know, insulates them. And it was waived because he could have brought that up. Do you have a single case that says trustees are held to strict liability? Well, I have not seen one that uses the expression strict liability. But given the fact that he, on his call, during the course of time he was on duty, he tenders records that represent things that are not true, and he swears that they are true. That is grounds for removal. I've argued cases in other districts where, you know, you screw up on accounting to your beneficiaries. You missed your deadline or whatever. That's grounds for removal. And that can be something where there's no intent to mess up on that. You just fail to do it because maybe you're being sued and you're scrambled to get other things done. But at the same time, if you mess up on that, you can be removed. And a trial court would be affirmed if he removes you. So here the question that you could be removed, the question is what's the procedure to get there? On this set of facts, there's no one in this room that disputes what I just recited to the court. No one. I don't think there's anyone that will dispute that there are, if you say 15 is 15, events that took place in reference to the assets of this company that are improper. Things were charged. Personal bills were charged to the company, et cetera, et cetera. That happened. So the question that I have for you is because it happened, if Lincoln is not the one that did it, Lincoln didn't know about it, and Lincoln relied upon his accountants as to the accuracy of their financial records, can Lincoln be removed without at least some kind of a hearing? He didn't have a hearing. He couldn't raise any. See, the whole thing is he could have raised if he had facts that would have explained anything that happened here in a way that makes it not illegal or not unlawful. But he couldn't, and it was on his watch. Chief, can I ask you a question? How does one prove that you don't know something? Is that possible? To prove you don't know something? Yeah. Can I prove that I don't know something? No. Can't do that. You only prove that I do know. But if it happened to prove I should have known. If it happened when he should have known. Exactly. If he should have known, he should have known. He signed off as if he did know, and we hold him to that. The last thing I would like to say is that the law shouldn't look at this as, you know, we should indulge every possible doubt in favor of a trustee if he says he didn't know something. The law should look at it from the point of view of the beneficiaries who, from their point of view, I don't care who did it. Look what happened here. But that's a great argument to make to a jury in a trial. It's a great argument to make to a judge in a trial. It's not an issue of law that we have to decide. So the question we have, we can't turn around and say we're going to ignore a procedural defect merely because you arrived at a good result. I mean, that doesn't happen. It doesn't work that way. Well, I don't think we're suggesting there's a procedural. Nobody's doubting what the procedural posture was of this case. But what you can't say is that any of the statements that I made are in dispute. All of those are true. And on that basis, a trustee can't be removed if it happened on his watch. It did.  Thank you, Your Honor. You're welcome. They are indeed arguing for strict liability. That was the first thing I was going to say in rebuttal. And what would a hearing look like? The issue is standard of care whenever there's a breach of duty. It's the standard of care, which is what the – did he know, did he do it, first question, violation of standard of care. Did he know and do nothing, violation of standard of care. And given the facts of the hearing, should he have known, violation of standard of care. If the court finds that he didn't do it, he didn't know and do nothing, and that there was no way he could have or should have known, then he doesn't get removed. That's what an evidentiary hearing would look like. And the evidence we put in, prima facie, shows he didn't do it, he didn't know, and he had no way to know. Well, let's take that third question. So let me – this makes the case a little bit trickier. You asked the delegation question. The delegation, unfortunately, took place at the corporate level. So the books that are fundamentally altered – So the main trust, SRET Trust, owns Schatz Building, LLC. And Schatz Building, LLC owns Shea, LLC and Dermot, LLC. Lincoln and NOAA were managers of the entities. The documents that are manipulated are at the entity level. It's not trust documents. At the entity level, you are allowed to delegate who handles the financial affairs, NOAA, who handles the marketing and branding, Lincoln. So at the corporate level, where the documents were altered, it was permissible. So by the time the information flows up to Lincoln as a trustee, it's too – because I want to use the wrong – But the wrongdoing was – The wrongdoing was – It was by NOAA, not by some rogue accounting department employee. NOAA stands as a co-trustee with Lincoln, right? Yes, but the wrongdoing was below, and this is important. It was – and I'm going to use the plaintiff's language. Sophisticated, seemingly professional levels of falsification, intentional fabrication, acts of falsification and deception. So that's what the should-have-known part of the evidentiary hearing is going to look like, if there's an evidentiary hearing. Given the degree to which NOAA hid his activities, should Lincoln have known in any capacity? Because I can submit to you that I think the trial court would be correct to say, if he should have known at the corporate level, he should have known as a trustee. I don't think he gets – Clearly, you can't separate – I don't think he can separate – One from the other. But he has to – should have known somewhere. And so the hearing is on – maybe they can show that he did know. That would be an issue for the evidentiary hearing. Maybe they can show that he didn't. That would be an issue for the evidentiary hearing. But I submit to you that the issue for the evidentiary hearing is what I think the court has been getting at, at least in its questioning, is it's not strict liability. It's what facts are there that would allow the court to conclude that Lincoln should be held culpable? And that's the issue, I believe, for evidentiary hearing. The reliance on the accountants and the reliance on the lawyers. The reliance on the accountants, it's not blaming. It's not pointing the finger. It's the notion that this was sophisticated enough at the corporate level to fool the accountant. That's it. It's not it's the accountant's fault, he should have done better, I'm Lincoln, I'm washing my hands of it. It's this was sufficiently sophisticated that the accountant didn't catch it. And the accountant is a trained numbers professional. So it's a defense to the should have known. It's not a blame. It's not absolve me. Now, but the waiver on the Trusts and Trustees Act is a little different, I think, actually, if the court orders an evidentiary hearing because I don't think there's a waiver issue anymore. I don't. If there's an evidentiary hearing, there's not. There's not. So fundamentally, I think if the court reverses for an evidentiary hearing, the waiver issue is moot. We ask that the court treat the second order as a preliminary injunction improperly granted without an evidentiary hearing and reverse for findings consistent therewith. Thank you. Counselors, thank you very much. The matter will be taken under advisement in a matter of continuing relation to the court. And the court stands adjourned.